# IN THE COURT OF APPEALS OF IOWA

No. 23-1456
Filed November 21, 2023

IN THE INTEREST OF K.E., a/k/a K.W.,
Minor Child,

K.W., Mother,
 Appellant,

N.E., Father,
 Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Jennifer Triner Olsen of Olsen Law Firm, Davenport, for appellant father.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Barbara E. Maness, Davenport, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., Schumacher, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DANILSON, Senior Judge.**

The parents of K.E. separately appeal the termination of their respective parental rights. The father challenges one of the statutory grounds authorizing termination, claims termination is not in the child's best interests, contends his bond with the child should preclude termination, and requests additional time to work toward reunification. The mother challenges whether termination of her rights is in the child's best interests and requests additional time to work toward reunification. The mother also relies in part upon her bond with the child and willingness to cooperate with offered services. Upon our review, we affirm on both appeals.

*I. Background Facts*

The Iowa Department of Health and Human Services became involved with this family in March 2022 following reports that the parents were using methamphetamine and marijuana and that the home was both unsafe and unsanitary. The couple was involved with law enforcement at that time as well. Officers executed a search warrant at the parents' home and found drug paraphernalia. And the mother reported to law enforcement that the father strangled her and slammed her head into the center console of a vehicle.

The juvenile court formally removed the child from the parents' custody in April. That same month, the mother obtained her own apartment separate from the father that was generally free from safety risks. Visits with the child were held at the mother's apartment for some time, but the caseworker moved visits back to a public place due to concerns the mother was using methamphetamine in the apartment.

Both parents completed department-requested drug testing in July—both tested positive for methamphetamine. The father successfully completed an outpatient treatment program just four days later, suggesting he was not truthful with his treatment providers. The mother sought inpatient treatment in August. She tested positive for methamphetamine when she arrived at the facility and left the program less than a week later without successfully completing treatment. The father failed to comply with department-requested drug testing eighteen separate times between August 2022 and May 2023. During the same period, the mother failed to comply with testing nineteen times.[1]

In November, the father perpetrated another act of domestic violence against the mother. He spat in her face and punched her in the back of the head. Then he ran into her apartment and struck a male friend.

The child was placed with her paternal aunt and her husband in January 2023. Since her placement there, the child bonded well with her caregivers, calling her aunt "ma" or "mom." Also in January, the mother's mental-health service provider removed the mother from her schedule due to the mother's failure to attend numerous appointments.[2]

By April, the parents had not progressed towards reunification, so the State petitioned for termination of both parents' parental rights. However, the juvenile

---

[1] The mother reported she missed one test because she had to attend an interview and could not test another time because she did not have photo identification with her.

[2] The mother no showed her first two appointments—one in June 2022 and another in July. She completed an intake assessment, completed one therapy session, and no showed another in December. The mother no showed an appointment in January, prompting the provider to remove the mother from her schedule.

court did not hold the termination hearing until mid-July. At the termination hearing, the mother reflected on her failure to complete substance-abuse treatment and conceded she "should have just stuck it out." She also was honest in admitting she "messed up more than a couple of times in this case." She went on say that if she had more time to work toward reunification she would "do anything that [she] had to do. Anything that was asked, [she] would do it." Similarly, the father admitted he did not complete another substance-abuse evaluation or engage in any substance-abuse treatment after testing positive for methamphetamine. Likewise, he admitted he has not completed a mental-health evaluation. However, he offered to return to substance-abuse treatment if given the chance.

The juvenile court found multiple statutory grounds for termination satisfied with respect to both parents, concluded termination is in the child's best interests, declined to apply a permissive exception to termination, and did not grant either parent additional time to work toward reunification. Both parents separately appeal.

## II. Standard and Scope of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Typically, our review follows a three-step process that involves determining if a statutory ground for termination is satisfied, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *A.B.*, 957 N.W.2d at 294. However, if

a parent does not challenge any of the three steps, we need not address the unchallenged steps on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### III. The Father

We begin by addressing the father's claims on appeal. With respect to the statutory grounds authorizing termination, the juvenile court terminated his parental rights pursuant to Iowa Code section 232.116(1)(e), (h), (i), and (*l*) (2023). When the juvenile court terminates on multiple statutory grounds, we may affirm on any one of those grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The father challenges the grounds under paragraph (e) but raises no challenge under paragraphs (h), (i), and (*l*). The father's failure to challenge all the statutory grounds relied upon by the juvenile court waives any claim of error related to the unchallenged grounds, in this case section 232.116(1)(h), (i), and (*l*). *See, e.g.*, *In re A.W.*, No. 23-1125, 2023 WL 6290680, at *1 (Iowa Ct. App. Sept. 27, 2023); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020); *In re N.S.*, No. 14-1375, 2014 WL 5253291, at *3 (Iowa Ct. App. Oct. 15, 2014). So we find statutory grounds authorizing termination satisfied under those unchallenged grounds.

Termination of the father's parental rights must also serve the child's best interests. *See* Iowa Code § 232.116(2). The father argues termination is not in the child's best interests, citing his improved attendance at visits in the month leading up to the termination hearing and his willingness to "comply with the services offered to him and any treatment recommended." When considering the children's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and

to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)).

The father has not demonstrated he has the ability or willingness to provide for the child's safety and needs. He has not meaningfully engaged in services to address his substance abuse or his history of domestic violence. We view his past conduct as indicative of how he will act in the future. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). It is not safe for the child to be around a parent who uses methamphetamine and is domestically abusive. Instead, the child deserves permanency as soon as possible. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). The child's paternal aunt and her husband are bonded to the child and willing to adopt. *See* Iowa Code § 232.116(2)(b). We conclude the child's interests are best served through termination of the father's parental rights.

Nonetheless, the father contends we should forgo termination due to his bond with the child, which may serve as a permissive exception to termination. *Id.* § 232.116(3)(c). However, it is the father's burden to establish a permissive exception. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). We question whether this issue is preserved as the juvenile court's termination order does not make an explicit ruling on whether termination of the father's rights should be precluded due to the strength of the parent-child bond. *See In re R.P.*, No. 23-0419, 2023 WL

3612412, at *2 (Iowa Ct. App. May 24, 2023); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Still, we note application of this exception "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). While there is a bond between father and child, it is not so strong that its severance would be detrimental to the child. As a result, we do not apply this permissive exception.

Finally, we address the father's request for additional time to work toward reunification. The court may grant a parent six additional months to work toward reunification under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). To grant such an extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See id.* § 232.104(2)(b).

While we understand the father claims he is now willing to engage in services and seek more substance-abuse treatment, we do not believe his methamphetamine use and domestic violence would be resolved in six months' time given his current lack of progress. This is not an instance where a parent is on the precipice of reunification and just needs a few more months to demonstrate sobriety and stability. This father was no closer to reunification at the time of the

termination hearing than he was when the child was removed from his custody. An additional six months would not be enough time for the father to meaningfully address the barriers to reunification that he already failed to address for more than a year. We do not grant the father any additional time to work toward reunification.

## IV. The Mother

We turn to the mother's appeal. She does not challenge the statutory grounds authorizing termination, so we do not address them on appeal. *See P.L.*, 778 N.W.2d at 40. Instead, we move on to address the mother's claims that termination of her parental rights is not in the child's best interests and she should have been granted additional time to work toward reunification. As previously discussed, when determining what is in the child's best interests we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). And the court may grant additional time to work toward reunification when it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b).

The mother highlights her difficulty getting to visits once the child was placed with the paternal aunt as an explanation for her inconsistency with visitations,[3] presumably suggesting she would do better at securing transportation if given

---

[3] Between August 2022 and June 2023, the mother attended roughly sixty-three percent of visits offered.

additional time. She also points to her past failed attempts at substance-abuse treatment and testimony that she is willing to seek treatment as evidence she does want to address her methamphetamine use. Finally, she notes the child is placed with family who intends on adopting the child in the event of termination, reasoning the grant of additional time to work toward reunification would not be disruptive to the child because it would not impact the child's placement.[4]

We recognize the mother submitted paperwork seeking admission to a mental-health and substance-abuse treatment provider the day before the termination hearing. We commend the mother both for taking that important first step toward bettering herself and being forthright when discussing her past failures. But we also note the mother admitted to using methamphetamine about a month prior to the termination hearing. So, like the father, we believe the mother is not on the threshold of reunification. Rather, she has a long way to go before she can safely care for a young child. We do not see enough evidence that the mother will be able to demonstrate the need for removal will not exist within just six months. We do not grant her additional time to work toward reunification.

Instead, we believe termination is in the child's best interests. As previously noted, the mother has unresolved substance-abuse issues. She also has not addressed her domestically abusive relationship with the father by meaningfully engaging in mental-health treatment beyond medication management. She

---

[4] To the extent the mother attempts to invoke section 232.116(3)(a), which permits the court to forgo termination when "a relative has legal custody of the child," she cannot. While the child was placed with her paternal aunt, the department retained legal custody of the child. Thus, section 232.116(3)(a) is inapplicable. *See In re J.B.*, No. 21-1688, 2022 WL 244867, at *2 (Iowa Ct. App. Jan. 27, 2022).

cannot provide the child with a safe environment or meet the child's basic needs because of these issues. Conversely, the paternal aunt and her husband are willing to adopt the child and provide the child with permanency. Termination is a necessary step toward adoption, meaning it is in the child's best interests in this instance.

## V. Conclusion

We affirm the termination of the father's parental rights. We also affirm the termination of the mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**